# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA JOHN UNTALAN MESA,<br><br>Defendant. | CRIMINAL CASE NO. 18-00007<br><br>**ORDER RE MOTION TO SUPPRESS THE PARCEL AND MOTION TO SUPPRESS WARRANTLESS SEARCH OF AUTOMOBILE AND SEIZURE OF CELL PHONE** |

The Motion to Suppress Parcel, ECF No. 104, and Motion to Suppress Warrantless Search of Automobile and Seizure of Cell Phone, ECF No. 105, both filed by Defendant Joshua John Untalan Mesa ("Defendant"), came before this court for an evidentiary hearing on October 28, 2019, and November 1, 2019. After hearing the testimony of witnesses and argument from counsel, the court took the motions under advisement. For the reasons discussed more fully herein, the court sets forth the bases for its decision in **DENYING** both motions.

## I. FACTS

On the evening of April 15, 2018 (Sunday),[1] U.S. Postal Inspector Richard Tracy ("Tracy") was working his shift at the Guam Main Facility Post Office in Barrigada ("Barrigada

---

[1] Tracy testified that there is no mail delivery on Sundays and in the evenings. Delivery starts as early as 8:00 a.m., or as late as 9:00 a.m., when the mailman departs the Barrigada Post Office.

1

Post Office") and identified the package in question, the "Lysa Young Package." As a postal inspector, part of Tracy's job is to profile packages suspected of containing contraband. He looks for identifying markers such as the package being sent through first class mail, whether the label on the package was handwritten, and whether the package came from a source state.[2] Once a suspected package is identified, Tracy sets that package aside and continues profiling packages until the end of his shift, in which he then contacts the Guam Customs and Quarantine Agency ("Guam Customs") for a narcotics canine (K-9).

Tracy testified that the Lysa Young Package contained the identifying markers: first class mail,[3] handwritten label, and sent from a source state. Tracy set it aside and the Guam Customs was informed that a K-9 was needed. The K-9 with its handler arrived at the Barrigada Post Office at 9:00 a.m. on April 16, 2018 (Monday), the "dog run"[4] was set up at 9:05 a.m., the dog run commenced at 9:10 a.m., and the K-9 alerted to the Lysa Young Package at 9:11 a.m.

Tracy then took the package and started drafting the affidavit for a search warrant. He contacted the U.S. Attorney's Office a little after 9:30 a.m. At 10:57 a.m., the U.S. Attorney's Office informed Tracy that the U.S. Magistrate Judge was not available until April 19, 2018 (Thursday).[5] Government Ex. 2a. In the meantime, Tracy continued working on the draft affidavit and sent the draft to an Assistant U.S. Attorney at 2:52 p.m. Government Ex. 2c. The Assistant U.S. Attorney returned her comments back to Tracy at 3:53 p.m., April 18, 2018 (Wednesday). Government Ex. 2d. On April 19, 2018, at 9:41 a.m., the U.S. Magistrate Judge

---

[2] Source state means states that have been identified by law enforcement as being sources of illegal drugs in the mail.

[3] Tracy testified that for the Lysa Young Package, there was no "guaranteed" or "expected" delivery date because it did not have a trackable record. It was mailed using four 50 cents stamps.

[4] A "dog run" is when parcels are placed in a straight line, about five feet apart, and the K-9 will run the straight line on both sides, sniffing the parcels.

[5] The court takes judicial notice that both the magistrate and district judges were off island and unavailable earlier that week.

signed the search warrant. Government Ex. 3.

That same day, after obtaining the search warrant, Tracy and his team[6] returned to the Barrigada Post Office and opened the package. They found methamphetamine inside a sealed vacuum bag. Tracy then prepared a draft tracking warrant to effectuate a controlled delivery[7] and emailed said draft to the U.S. Attorney's Office at 1:36 p.m., April 20, 2018 (Friday). Government Ex. 4. The U.S. Magistrate Judge signed the tracking warrant that same day, at 2:48 p.m. Government Ex. 5.

Between the time the tracking warrant was signed (Friday, April 20, 2018) and the controlled delivery date (Wednesday, April 25, 2018),[8] Tracy and his team conducted surveillance of the delivery location and researched the intended recipient of the package. Because a Lysa Young does not exist at the delivery address indicated on the package, Tracy interviewed the mail carrier familiar with that route and the village mayor's office; researched the law enforcement database; and took other actions necessary to ensure that the controlled delivery was a viable option. Tracy testified that if a controlled delivery was not a viable option, then the package is stored in a locker and eventually destroyed. Tracy also used this time to coordinate with other law enforcement agencies about the delivery and ensure the safety of all involved.

On April 25, 2018, the controlled delivery took place. The package was placed in a cluster mailbox.[9] Defendant was observed approaching the cluster mailbox, retrieving the

---

[6] There were other law enforcement agencies involved in the investigation. The U.S. Postal Inspection Service worked in conjunction with the Guam Customs and the Department of Homeland Security.

[7] The package containing methamphetamine was replaced with sham "methamphetamine."

[8] April 21 and 22, 2018 fell on a Saturday and Sunday, respectively.

[9] The package was sent to a physical address but cluster mailboxes are provided in villages where curbside delivery is not available to residents.

3

package from the mailbox, and walking back to a blue Toyota Tercel. Defendant went into the vehicle, drove away from the area, and travelled to another village where he was observed parking the vehicle at a residence. There were no other occupants in the vehicle with him.

Shortly after Defendant arrived at the residence, law enforcement officers were notified that the package has been breached.[10] Consequently, officers approached the residence. They observed Defendant holding the package on his hand. Defendant then fled the scene and ran into the jungle. Law enforcement set up a perimeter and conducted a search of Defendant. Defendant was found on a tree, appearing to be suffering from heat exhaustion. Law enforcement also found the broken breaching device and scratch tickets that were inside the sham package.

While the search in the jungle was on-going, law enforcement observed a cellular phone on the driver's seat of the Tercel. Defendant's girlfriend was present at the scene, and she dialed Defendant's cellular number. The cellular phone in the vehicle rang. The vehicle was searched, the cellular phone was seized, and the vehicle was secured thereafter. Tracy testified that based on his experience, cellular phones are used to communicate with coconspirators, including the sender of the package.

On April 26, 2018 (Thursday), a day after the controlled delivery, Tracy drafted the criminal complaint and Defendant made his initial appearance that same day. Between April 27, 2018 (Friday) and May 2, 2018 (Wednesday),[11] Tracy conducted additional investigation of the case, including determining the make and model of the cellular phone, gathering reports from agencies involved in the investigation, writing his own report, compiling evidence, and handling administrative matters related to the case. Tracy continued to gather evidence, including returning to the jungle, trying to get fingerprints from the packaging, and attempting to locate

---

[10] As part of the controlled delivery, a breaching device was placed in the package to notify law enforcement once the package was opened.

[11] April 28 and 29, 2018 fell on a Saturday and a Sunday, respectively.

4

and identify the sender and addressee of the package.

Tracy started drafting the affidavit for the search warrant on the cellular phone on April 27, 2018, but needed to gather additional information to complete the affidavit. On the evening of May 3, 2018 (Thursday), Tracy emailed the draft affidavit to the U.S Attorney's Office. Government Ex. 8h-i. The search warrant for the cellular phone was signed on May 4, 2018 (Friday), at 4:03 p.m., by the designated judge for the District Court of Guam. Government Ex. 10.

## II. DISCUSSION

### a. Defendant's Motion to Suppress Parcel, ECF No. 104

#### i. Standing Issue

Defendant alleges that there was unreasonable delay between the seizure of the parcel and obtaining the search and seizure warrant, and the delivery of the parcel. Def.'s Mot. at 2, ECF No. 104. Defendant asserts that this unreasonable delay constitutes a violation of the Fourth Amendment. *Id.*

The Government contends that Defendant lacks Fourth Amendment standing to challenge the search of the package, because Defendant is not the intended recipient of the package. Opp'n at 4-5, ECF No. 108. The package was addressed to a "Lysa Young". *Id.* at 4.

The court need not address the standing issue because "Fourth Amendment standing . . . is 'not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.'" *United States v. Garay*, 938 F.3d 1108, 1111 (9th Cir. 2019), citing *Byrd v. United States*, 138 S.Ct. 1518, 1530 (2018).

#### ii. The delay was not unreasonable

Defendant argues that the nine-day delay was unreasonable with the package having been seized on April 16, and having been delivered over a week later, April 25. Def.'s Reply at 2,

ECF No. 111. The government has the burden of establishing the reasonableness of a delay. *United States v. Escobar*, 2016 WL 3676176, at *5 (D. Minn. July 7, 2016), aff'd, 909 F.3d 228 (8th Cir. 2018). There is no bright-line rule for determining whether or not a seizure constituted unreasonable delay. *See United States v. Aldaz*, 921 F.2d 227, 230 (9th Cir. 1990) (rejecting arguments that prior case law established a bright-line rule permitting delays under 29 hours). Instead, courts must ask the following question: "based upon the facts, was the delay in handling the packages unreasonable?" *Id.*

The court must analyze each component of a delay, from the initial seizure of the package to the execution of the search warrant. *Aldaz*, 921 F.2d at 230-31. The court determines the reasonableness of the delay by examining the totality of the circumstances surrounding each component of the delay. *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002).

When the package was first set aside by Tracy, there was reasonable and articulable suspicion to do so. The package had identifying markers containing contraband. See *Hernandez*, 313 F.3d at 1210 ("Postal workers may detain a package to conduct an investigation if they have a reasonable and articulable suspicion that it contains contraband or evidence of illegal activity."). Thereafter, Tracy developed probable cause to further detain the package when the K-9 alerted to the presence of narcotics in the package. *See United States v. Lozano*, 623 F.3d 1055, 1061 (9th Cir. 2010) (Probable cause is sufficient to support the subsequent detention of a package.).

In *Hernandez*, the Ninth Circuit measured the "interference with [the defendant's] possessory interest caused by the delay" between the "earliest time of delivery [of the express mail]" and the time the canine was called for a sniff. 313 F.3d at 1213. Here, the package was initially detained on a Sunday night, and there are no mail delivery on Sunday evenings. The earliest mail delivery would have been Monday morning, at 8:00 a.m. However, by 9:10 a.m.,

6

the K-9 arrived at the Barrigada Post Office and by 9:11 a.m., probable cause has already been established.

The Government attributes the delay between April 16 (when Tracy developed probable cause for the search) and April 19 (when the magistrate judge signed the warrant) to "the required review process all search warrants must undergo, and the availability of a judge to sign the warrant." Opp'n at 9, ECF No. 108. When the K-9 alerted to the presence of narcotics in the package, Tracy immediately contacted the U.S. Attorney's Office. The U.S. Attorney's Office responded to Tracy within 1.5 hours of his email, informing him that the magistrate judge was not available until Thursday, April 19. In between that time, Tracy drafted the affidavit and continued with his investigation of the package.

The Ninth Circuit has held that delays due to the administrative requirements for securing search warrants is reasonable. *Aldaz*, 921 F.2d at 231. For example, in *United States v. Gill*, the package was detained on a late Thursday afternoon. 280 F.3d 923, 929 (9th Cir 2002). Investigation was then conducted and the necessary paperwork for the search warrant was completed by Friday, and the AUSA indicated that he would review it "over the weekend". *Id.* The magistrate judge was not available until Tuesday to issue the warrant. *Id.* The Ninth Circuit found that the delay was not unreasonable, stating that "[e]ven with express mail, [the defendant's] predominant interest was in the privacy of the package and not merely prompt delivery." *Id.*

After the magistrate judge signed the search warrant, Tracy and his team immediately executed the warrant, wherein they found methamphetamine in the package. At that point, because the package contained contraband, Defendant has lost any possessory interest. However, even assuming that he still had possessory interest by the time the methamphetamine was discovered in the package, any delay at that point was not unreasonable. The search warrant was

7

executed on April 19. A tracking device was signed on April 20. April 21 and 22 fell on a weekend. Tracy continued with his surveillance, investigation, and coordination with other law enforcement agencies on April 23 and 24. This was necessary to ensure a successful and safe controlled delivery on April 25.

Accordingly, any delay as it relates to the Lysa Young Package was not unreasonable.

### b. Motion to Suppress Warrantless Search of Automobile and Seizure of Cell Phone, Unreasonable Delay, ECF No. 105

Defendant moves the court to (1) suppress all evidence based upon the warrantless search of the vehicle; (2) suppress all evidence extracted from the phone; (3) suppress all fruit and evidence derived therefrom; and (4) dismiss Superseding Indictment Counts 2 and 3, Illegal use of a Communication Facility. Def.'s Mot at 6, ECF No. 105.

Defendant argues that the evidence must be suppressed because (1) the search of the vehicle was warrantless; (2) the seizure of the phone was warrantless; and (3) the prolonged detention of the phone prior to obtaining a warrant was unreasonable. *Id.* at 2.

#### i. The warrantless search of the vehicle and the warrantless seizure of the cellular phone fell under the automobile exception.

On a motion to suppress, "[t]he government bears the burden of justifying a warrantless search." *United States v. Johnson*, 936 F.3d 1082, 1084 (9th Cir. 1991). This burden is no greater than proof by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

"The Fourth Amendment proscribes unreasonable searches. As a general rule, searches conducted without a warrant and probable cause are presumptively unreasonable, subject to a number of 'specifically established and well-delineated exceptions.'" *United States v. Rambo*, 74 F.3d 948, 953 (9th Cir. 1996), citing *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a warrantless search of an automobile and the containers within it, provided that an

officer has probable cause to believe that he will discover contraband or evidence of a crime. *Rambo*, 74 F.3d at 953 (citations omitted). *See also United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010); *Carroll v. United States*, 267 U.S. 132, 149 (1925) (". . . if the search and seizure without a warrant are made upon probable cause . . . that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.").

Reviewing an officer's probable cause determination requires consideration of the total circumstances known to the officer at the time of the search. *See United States v. Brooks*, 367 F.3d 1128, 1134 (9th Cir. 2004). Probable cause to search exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas*, 517 U.S. at 696 (citations omitted). Probable cause does not require a certainty but rather, only a fair probability or a substantial chance that criminal activity took place or is taking place. *Brooks*, 367 F.3d at 1134.

Defendant argues that the warrantless search was premised on the concepts of "plain view" and "inventory search" and not "probable cause." Def.'s Mot. at 4, ECF No. 105. He further argues that because the vehicle was parked and not "readily mobile," the warrantless search exception does not apply. *Id.* at 4. Defendant's arguments have no merit.

Defendant used the vehicle to pick up the package containing methamphetamine.[12] When Defendant arrived at a residence, law enforcement received a signal indicating that the package had been breached. Law enforcement observed Defendant holding the breached package before he fled into the jungle. Meanwhile, law enforcement saw his cellular phone in the vehicle he used to pick up the package. Tracy testified at the evidentiary hearing on October 28, 2019, that cellular phones are typically used by drug traffickers to communicate with their co-conspirators and/or drug source.

---

[12] At the time Defendant picked up the package, it was unknown to him that the methamphetamine was replaced with sham "methamphetamine."

9

As such, the court finds that law enforcement officers had probable cause to search the vehicle that Defendant was driving and to seize his cellular phone. As discussed above, a warrantless search of a vehicle based on probable cause falls under one of the exceptions where a warrant is not needed.

The court now turns to Defendant's argument that the vehicle was parked and not "readily mobile" and the operator was not in the vicinity of the vehicle and therefore, the automobile exception does not apply to his case. *See* Def.'s Mot. at 3-4, ECF No. 105. Defendant has not provided legal authority to support this proposition.[13] For example, Defendant cites *California v. Carney*, 471 U.S. 386 (1985), but that case makes clear that even a parked mobile home falls under the warrantless search exception. *Carney*, 471 U.S. at 391 ("Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception."). The Ninth Circuit has also ruled on this issue, stating in *United States v. Hatley*, 15 F.3d 856, 859 (9th Cir. 1994), that "we have explicitly held that the vehicle exception applies to a search of a vehicle parked on a private driveway."

### ii. The delay in obtaining a search and seizure warrant on the cellular phone was not unreasonable.

Defendant argues that even if the initial seizure was lawful, the nine-day delay in obtaining a search and seizure warrant on the cellular phone was unreasonable and violates the Fourth Amendment. Def.'s Mot. at 5, ECF No. 105. The cellular phone was seized on April 25,

---

[13] Defendant cites to *United States v. Johnson*. It should be noted that Defendant failed to provide the actual citation—only that it was published on January 9, 2019 by the Ninth Circuit. In that case, according to Defendant, the Ninth Circuit held that "when an arrestee is the recent occupant of a vehicle, the arresting officer may search that vehicle if the arrestee is unsecured and within reaching distance of the passenger compartment . . ." Def.'s Mot. at 4, ECF No. 105. And given that that was not the case here, that Defendant was not in the vicinity of the vehicle, the vehicle should not have been searched without a warrant. *Id.*

A Westlaw search of a "*United States v. Johnson*" published on January 9, 2019 by the Ninth Circuit produced a citation of 913 F.3d 793. However, that case was vacated by the Supreme Court and remanded to the Ninth Circuit in *Johnson v. United States*, 2019 WL 5300895 (Oct. 21, 2019).

10

and it was not until May 4, that a search and seizure warrant was obtained. Defendant asserts that he had a substantial privacy interest with respect to the cellular phone, citing *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013); and *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019). These cases are inapposite. While both cases place a great emphasis on the privacy contained in an electronic device, these cases pertain to a warrantless search. That is *not* the case here.

As discussed above, the court determines the reasonableness of the delay by examining the totality of the circumstances surrounding the delay. *Hernandez*, 313 F.3d at 1213. Such determination is made on a case-by-case basis. *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). The court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (citation omitted). In that case, the Ninth Circuit found that the delay in obtaining a search warrant on a laptop was reasonable, because during the entire time period when the laptop was retained by the Government, the defendant was in custody and would not have had access to the laptop for his use. *Id.* at 633. The court then considered the degree to which the seizure and retention of the laptop was necessary for the promotion of legitimate governmental interests. *Id.*

In this case, the Government correctly points out that similar to the defendant in *Sullivan*, Defendant's possessory interest in his cellular phone was minimal. During the entire time period when Defendant's cellular phone was retained by the Government, Defendant was in custody and would not have had access to the cellular phone for his use. "Where individuals are incarcerated and cannot make use of the seized property, their possessory interest in that property is reduced." *Id.* In addition, the seizure and retention of Defendant's cellular phone was necessary for the promotion of legitimate governmental interests. That is, the cellular phone may

11

have contained evidence of drug trafficking.

Further, the delay between the time the cellular phone was seized and the time the search and seizure warrant was obtained was reasonable. During this time, Tracy was actively working on the case. In order for him to complete the affidavit for the search and seizure warrant of the cellular phone, he needed additional information. Tracy continued to gather evidence and investigate. Accordingly, the court finds that the delay in obtaining a warrant for the cellular phone was not unreasonable.

### III. CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress Parcel, ECF No. 104, and Defendant's Motion to Suppress Warrantless Search of Automobile and Seizure of Cell Phone, ECF No. 105, are **DENIED**.

An amended trial scheduling order will be issued separately.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Nov 21, 2019**